UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| A.R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. _____ |
| v. | § | |
| | § | JURY DEMANDED |
| BRAZOS COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

> **This is a case of a preventable physical/sexual assault by three assailants, over several hours, of a then-minor pretrial detainee in the Brazos County jail.**



<u>Table of Contents</u>

I.     Introductory Allegations ..............................................................................3

     A.     Parties ..................................................................................................3

     B.     Jurisdiction and Venue .......................................................................3

II.    Factual Allegations ....................................................................................4

     A.     Preliminary Statements .......................................................................4

     B.     A.R.'s Horrific Assault in the Brazos County Jail ............................5

     C.     *Monell* Liability of the County ........................................................10

             1.     Introduction.............................................................................10

             2.     Brazos County Policies, Practices, and Customs.................11

             3.     Texas Commission on Jail Standards Inspections of County Jail........13

             4.     Other Brazos County Jail Incidents .....................................18

III.   Causes of Action ......................................................................................19

     A.     Fourteenth Amendment Due Process Claims Under 42 U.S.C. § 1983: Objective Reasonableness Pursuant to *Kingsley v. Hendrickson* ...................19

     B.     Cause of Action Against Brazos County Under 42 U.S.C. § 1983 for Violation of Constitutional Rights .................................................21

IV.   Concluding Allegations and Prayer ..........................................................23

     A.     Conditions Precedent .......................................................................23

     B.     Use of Documents at Trial or Pretrial Proceedings .........................23

     C.     Jury Demand ....................................................................................23

     D.     Prayer ...............................................................................................24

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff files this complaint and for cause of action will show the following.

I.      Introductory Allegations

A.      Parties

1.      Plaintiff A.R., a male, is a natural person who was a minor when he was assaulted as referenced in this complaint. A.R. is now an adult.

2.      Defendant Brazos County, Texas ("Brazos County" or the "County") is a Texas county.  Brazos County may be served with process pursuant to Federal Rule of Civil Procedure 4(j)(2) by serving its chief executive officer, Honorable County Judge Duane Peters, at 200 S. Texas Ave., Suite 332, Bryan, Texas 77803, or wherever Honorable County Judge Duane Peters may be found.  Service on such person is also consistent with the manner prescribed by Texas law for serving a summons or like process on a county as a Defendant, as set forth in Texas Civil Practice and Remedies Code Section 17.024(a).  County acted or failed to act at all relevant times through its employees, agents, contractors, representatives, jailers, and/or chief policymakers, all of whom acted under color of state law at all relevant times, and is liable for such actions and/or failure to act to the extent allowed by law (including but not necessarily limited to law applicable to claims pursuant to 42 U.S.C. § 1983).  County's policies, practices, and/or customs were moving forces behind, and caused, were proximate causes of, and were producing causes of, constitutional violations and resulting damages referenced in this pleading.

B.      Jurisdiction and Venue

3.      The court has original subject matter jurisdiction over this lawsuit according to 28 U.S.C. § 1331 and 1343(4), because this suit presents a federal question and seeks relief pursuant to federal statute(s) providing for the protection of civil rights.  This suit arises under the United

States Constitution and 42 U.S.C. § 1983.  The court has personal jurisdiction over the County because it is a Texas county. Venue is proper in the Houston Division of the United States District Court for the Southern District of Texas, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to claims in this lawsuit occurred in Brazos County. Brazos County is in the Houston Division of the United States District Court for the Southern District of Texas.

## II.      Factual Allegations

### A.      Preliminary Statements

4.      Plaintiff provides in factual allegations sections below the general substance of certain factual allegations.  Plaintiff does not intend that those sections provide in detail, or necessarily in chronological order, any or all allegations.  Rather, Plaintiff intends that those sections provide Defendant sufficient fair notice of the general nature and substance of Plaintiff's allegations, and further demonstrate that Plaintiff's claims have facial plausibility.  Whenever Plaintiff pleads factual allegations "upon information and belief," Plaintiff is pleading that the specified factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.  Moreover, if Plaintiff quotes a document, conversation, or recording verbatim, Plaintiff has done Plaintiff's best to do so accurately and without any typographical errors. However, some typographical errors may still exist.

5.      Plaintiff pleads facts which give rise to, and thus assert, conditions of confinement claims. Conditions of confinement claims require no deliberate indifference on behalf of a governmental entity or governmental actor. Defendant's policies, practices, and customs resulted

in unconstitutional punishment and served no legitimate governmental interest. In the alternative, Plaintiff pleads facts which give rise to episodic acts and/or omissions claims.

6.      Regardless, pursuant to United States Supreme Court authority, Plaintiff need not assert in this pleading specific constitutional claims or guarantees but rather must merely plead facts which plausibly give rise to constitutional claims. Plaintiff thus asks that the court apply the correct legal theory or theories to the facts pled.  Further, in the context of municipal/county liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to, or personal knowledge of, specific details regarding the existence or absence of internal policies or training procedures before discovery.  As such, a plaintiff need not specifically state what a municipal/county policy is and can rely on minimal factual allegations in the plaintiff's pleading.  These minimal factual allegations may include but not be limited to multiple harms occurring to a plaintiff himself, misconduct that occurred in the open, involvement of multiple officials in misconduct, or merely the specific topic of a challenged policy or training inadequacy. Therefore, Plaintiff is not pleading Plaintiff's "best case" and will only be able to do so after conducting discovery.  Plaintiff does not intend to "stand" on this pleading but will seek leave to amend as further facts are developed, or in the event any court determines that Plaintiff's live pleading is any manner deficient.

B.      A.R.'s Horrific Assault in the Brazos County Jail

7.      A.R., a minor at the time, was arrested and ultimately detained at the Brazos County jail on or about Saturday, October 8, 2022. A.R. had pending charges for misdemeanors, all of which were subsequently dismissed.  A.R. was assigned to cell G11. Upon information and belief, cell G11 is part of housing unit SHU G.

8.      Upon information and belief, no employee or agent of Brazos County conducted any checks of A.R., or anyone else in the housing unit in which A.R. was incarcerated, during an over five-hour period on October 8, 2022. This violated all known jail standards. As a result, A.R. was brutally assaulted, including sexual assault. The assaults were perpetrated by other jail detainees who were minors at the time - Fidel Sanchez, Jr., Devin Ray Newton, and T.S.L. (a minor as of the filing of this complaint).

9.      Upon information and belief, Fidel Sanchez, Jr., was assigned to housing SHU B or SHU G. As of the date A.R. was assaulted, Sanchez had pending felony and misdemeanor cases. Mr. Sanchez was jailed for violation of a bond/protective order two or more times; injury to a child/elderly/disabled individual with intent to commit serious bodily injury and/or serious mental deficiency, impairment, or injury; continuous violence against the family; theft from a person; interference with an emergency call; and possession of marijuana 0-2 ounces. Upon information and belief, this information was known and/or available to, through actual or constructive knowledge, Brazos County and its employees and/or agents working in the jail.

10.      Upon information and belief, Devin Ray Newton was assigned to housing unit SHU B or SHU G. As of the date A.R. was assaulted, Newton had pending state jail felony charges for evading arrest or detention with a previous conviction. Upon information and belief, this information was known and/or available to, through actual or constructive knowledge, Brazos County and its employees and/or agents working in the jail.

11.      Upon information and belief, T.S.L. was assigned to housing unit SHU B or SHU G. T.S.L. had a pending state jail felony charge for unauthorized use of a vehicle, and three pending state jail felony charges for theft of firearms. Upon information and belief, this information was

known and/or available to, through actual or constructive knowledge, Brazos County and its employees and/or agents working in the jail.

12.     A.R. told jail staff before the assaults in substance that he was fearful of the perpetrators.  Further, during the time period when the three assailants were left to their own devices, A.R. pressed a button, presumably that for the intercom system, or in the alternative a "buzzer" through which he could seek help.  Nobody came to his assistance.

13.     The sexual assault perpetrated against A.R. by these three individuals was, according to a post-assault investigation, preceded by repeated physical assaults "throughout the day." A deputy assisting in the investigation indicates that he was told by medical staff at a local hospital that A.R. had swelling of the neck and throat, which could be life-threatening, and which occurred as a result of A.R. being strangled by Newton to the point of, or near, unconsciousness. Further, according to an investigating officer, after A.R. was strangled almost to death in the Brazos County jail, he had to comply with orders being given by the assailants to attempt to save his life.

14.     The deputy-investigator indicated that he saw several of the occurrences from reviewing video recordings of one or more camera feeds. The deputy referred to "incidents" in the plural. He also referenced a forensic interview with A.R., although he did not make clear who conducted the interview. The deputy represented that A.R. "confirmed that Newton and Sanchez used threats of force, rape, and/or death to make him perform the different acts." This included the forced insertion of a bar of soap into A.R.'s anal cavity out of fear for his life. Further, Sanchez forced a wooden-handled broom into A.R.'s anal cavity.

15.     At least one of the sexual assaults seemingly occurred in A.R.'s assigned cell, G11, where it was captured by a video recording. During the final sexual assault, Sanchez retrieved a

broom from the ground floor and returned to the second floor with it. After this, T.S.L. retrieved lotion and applied it to the broom handle. Newton then joined Sanchez and Lyles as they entered A.R.'s cell. Sanchez and Newton ordered A.R. to remove his clothing and get on all fours in the corner of his cell. Sanchez then forced a broom handle into A.R.'s anus while A.R. cried out in pain. Newton and Lyles stood by, watching and laughing. Medical staff later confirmed to the deputy that A.R. had "suffered a linear tear inside his rectum."

16.     Before the sexual assault of A.R., Newton and Sanchez threatened rape many times. Although the sequence of events is unclear, Newton "explained that at one point he and [Sanchez] used the threat of sexual assault (rape) and physical violence to force [A.R.] into giving up [his] account information for the jail phone system and commissary account information." Sanchez and Newton successfully compelled A.R.'s account information and used it to text A.R.'s mother to request money from her as though A.R. had sent the request.  The assailants were free to do whatever they wanted to do, for hours on end, due to nonexistent supervision.

17.     Brazos County made admissions about some of what occurred:

| | |
|---|---|
| **From:** | Byron Shelton <byron.shelton@tcjs.state.tx.us> |
| **Sent:** | Thursday, October 27, 2022 5:42 PM |
| **To:** | Wendy Wisneski |
| **Cc:** | Ricky Armstrong |
| **Subject:** | Fwd: Incident |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

FYI, Brazos sexual assault information

Get Outlook for iOS

**From:** Lawonder S. Bradley <LBradley@brazoscountytx.gov>
**Sent:** Thursday, October 27, 2022 4:44 PM
**To:** Byron Shelton <byron.shelton@tcjs.state.tx.us>
**Subject:** Incident

Dear Mr. Shelton,

On October 8, 2022, an incident occurred at the Brazos County Detention Center, and it was discovered that no officer entered SHUB and G for a period of over 5 hours. Currently an administrative investigation is being conducted. It was discovered that inmates in SHU B and G were placed in the dayroom in the guardian system and no hourly checks were conducted. (When one is placed in the dayroom the timer automatically turns off in the guardian system)

Since this incident, all timers have been turned back on. All Supervisors were instructed that under no circumstances was any inmate to be placed in the dayroom in the guardian system. Guardian reports are to be done at the end of every rotation and any movement is to be checked and sent to the Jail Lieutenant for additional verification.

Rule 275.1 was discussed at length at the supervisors meeting. Training was also administered after the supervisors meeting detailing how to run more detailed reports. Once the investigation is completed further training will be given based on the findings. Pending the conclusion of the administrative investigation we will inform you of all disciplinary action taken.

Should you have any further questions or concerns, please don't hesitate to contact me.


Respectfully,

Lawonder Shauna Bradley Smith
Compliance Officer
Brazos County Sheriff's Office
1835 Sandy Point Road
Bryan, TX 77807
979-361-4862

"We serve and protect our community with professionalism by providing a safe and secure detention facility for all individuals in our care or custody to fulfill our role in the Criminal Justice System."

1

18.     Felony charges were filed against Sanchez, Newton, and T.S.L. as a result of the extended assaults. Newton was charged with aggravated assault with a deadly weapon, aggravated sexual assault, and sexual coercion. Sanchez was charged with aggravated sexual assault and sexual coercion. T.S.L. was charged with aggravated sexual assault.

19.     Plaintiff's counsel attempted without success to obtain underlying primary evidence of the assaults. Such evidence would include but not be limited to any audio and video recordings. Thus, to be able to plead Plaintiff's best case, and prepare for trial and any dispositive motion practice, Plaintiff will need to obtain extensive discovery from Brazos County.

20.     Regardless, upon information and belief, no employee and/or agent of Brazos County checked on, including making appropriate cell checks of, either A.R., Sanchez, Newton, and/or T.S.L., for several hours while the three assailants did whatever they chose to do to A.R. Further, upon information and belief, some of what occurred was captured on video feed(s) which one or more Brazos County jail employees and/or agents would have easily been able to view, had policy, practice, or custom mandated it.

C.      _Monell_ Liability of the County

1.      Introduction

21.     Plaintiff sets forth in this section of the pleading additional facts and allegations supporting liability claims against County pursuant to _Monell v. Department of Soc. Svcs.,_ 436 U.S. 658 (1978).  It is Plaintiff's intent that all facts asserted in this pleading relating to policies, practices, and/or customs of County support such _Monell_ liability claims, and not just facts and allegations set forth in this section.  Such policies, practices, and/or customs alleged in this pleading, individually and/or working together, and whether supporting episodic acts and omission and/or conditions of confinement claims, were moving forces behind and caused the constitutional

violations and damages referenced herein.  These policies, practices, and/or customs are pled individually and alternatively.  County knew when it incarcerated A.R. that its personnel, policies, practices, and/or customs were such that it could not meet its constitutional obligations to provide medical and mental health treatment to, and protect, A.R.  County made decisions about policy and practice which it implemented through its commissioner's court, its sheriff, its jail administrator, and/or through such widespread practice and/or custom that such practice and/or custom became the policy of County as it related to its jail.  The Fifth Circuit Court of Appeals has made it clear that Plaintiff need not allege at the pleading stage the identity of chief policymakers.

2.      Brazos County Policies, Practices, and Customs

22.     Plaintiff lists beneath this heading County policies, practices, and/or customs which Plaintiff alleges, at times upon information and belief, caused, proximately caused, were producing causes of, and/or were moving forces behind damages referenced in this pleading.  Thus, County is liable for all such damages.  These policies, practices, and/or customs worked individually, and/or in the alternative together, to cause damages referenced in this pleading. Plaintiff pleads conditions of confinement claims arising from policies, practices, and/or customs. Deliberate indifference is not an element of, or a requirement to prove, conditions of confinement claims. In the alternative, Plaintiff pleads episodic act and/or omission claims arising from policies, practices, and/or customs. Plaintiff pleads, to the extent necessary, that deliberate indifference underlying any episodic act and/or omission claims, upon information and belief, occurred with regard to relevant actors. Regardless, Plaintiff asks that the court apply the correct law to the facts pled, as required by Supreme Court precedent.

23.     Courts have recognized that it is exceedingly rare that a plaintiff will have access to or personal knowledge of specific details regarding the existence or absence of a

municipal/county defendant's internal policies or training procedures before discovery. Thus, at the pleading stage, a plaintiff is merely required to put a governmental entity or private corporation on fair notice of the grounds for which it is being sued. Federal courts must rely on summary judgment to weed out unmeritorious claims. Plaintiff thus pleads the following policies, practices, and customs, which give rise to conditions of confinement claims, or in the alternative episodic act and/or omission claims, upon information and belief:

- Brazos County did not monitor or in the alternative did not adequately monitor detainees.

- Brazos County may have failed to reprimand and/or take remedial action against employees and/or agents as a result of action and/or inaction related to the assaults of A.R., thus confirming that the policies, practices, and/or customs which led to the assaults were in fact *de facto* policies of Brazos County.

- Brazos County did not provide and/or delayed in providing medical treatment to detainees.

- Brazos County did not require jailers to continuously, or alternatively periodically, watch detainees in cells and housing areas equipped with cameras.

- Brazos County housed detainees with a violent and/or felonious criminal history, and/or pending charges for same, with detainees without a similar history and/or who were particularly vunerable to assault, including sexual assault.

- Brazos County did not reassign to new housing detainees who reported a credible fear of safety in the current housing assignment.

- Brazos County classification procedures and/or practices did not account for serious risk of harm to detainees and improperly housed detainees together.

- Brazos County failed to train its employees regarding things including proper cell checks, classification of detainees, risk of detainee sexual assault, and/or the necessity of promptly responding to material detainee requests over the jail intercom system.

- Brazos County chose not to to promptly repair malfunctioning or broken intercom devices.

- Brazos County allowed or prescribed that detainee periodic check computer-generated timers be turned off when certain detainees were assigned to certain portions of the jail.

- Brazos County understaffed its jail.

- Brazos County did not require its employees to promptly respond to material requests made by detainees over the jail intercom system.

- Brazos County chose not to develop adequate policies specific to youthful inmates – those under 18 years of age.

- Brazos County did not safely store items that could be used in an assault, including a sexual assault, such as brooms and lotion.

- Brazos County allowed detainees with violent and/or felonious criminal histories to move about the jail without supervision or restraint.

3.      Texas Commission on Jail Standards Inspections of County Jail

24.     Texas Commission on Jail Standards ("TCJS") reports and documents regarding inspections of the County jail further demonstrate these and/or other policies, practices, and/or customs which, when applied individually and/or working together, caused, were proximate causes of, and/or were producing causes of damages asserted in this pleading.  They also provide notice to County of issues in the jail.  Upon information and belief, every time the TCJS inspected the County jail, the sheriff, the jail administrator, and a County Commissioners Court representative would sign the inspection form and/or be notified of the results.

25.     TCJS inspections indicate Brazos County's knowledge of ongoing issues with making cell observations, as well as Brazos County's failure to change its policies, practices, and/or customs after the horrific assault of A.R. Brazos County's failure to change its policies, practices, and/or customs indicate, with regard to unwritten customs and practices, that such were in place at the time of and preceding A.R.'s assault.

26.     The TCJS inspected the Brazos County jail from April 16 through 17, 2014. When reviewing hourly documentation of direct supervision locations in the jail, the inspector found that jailers were not consistently documenting face-to-face observations of detainees requiring the no-less-often than 60-minute interval, in accordance with the TCJS standard. Jail administration indicated that they would re-train jailers to document checks in accordance with the TCJS minimum jail standard.

27.     The TCJS inspected the Brazos County jail again from July 8 through 10, 2019. Among other things, when reviewing inmate files, the TCJS inspector found that on occasion inmates were reclassified beyond the 90-day period, and as well up to three to four days late. Jail administration had to email the inspector a plan of action within 30 days. Further, when reviewing 30-minute face-to-face observation forms from the courthouse, the inspector saw that on occasion observations were made late by three-to-five minutes. The inspector wrote, "This inspector also recommended that the administration re-train all employees on the importance of conducting face-to-face observations as required by minimum jail standards." The inspector required follow-up action, specifically that jail administration email the inspector, within 30 days, a roster of those trained.

28.     The TCJS inspected the Brazos County jail again from June 29 through July 1, 2020. Among other things, while reviewing detainee files, the TCJS inspector saw that on occasion

a judge was not notified of detainee mental status within the 12 hours required by Article 16.22 of the Code of Criminal Procedure. The inspector recommended that jail administration implement a plan of action to ensure that a judge is consistently notified as required by law. Jail administration had to email the inspector a plan of action within 30 days.

29.     Further, when walking through the jail, the inspector saw that at times intercoms were not answered in a timely manner. Intercoms should allow detainees to obtain help when needed, but they were no help to A.R. The inspector recommended that jail administration conduct roster training to ensure that responding to intercoms was made a priority by control room jailers. Jail administration had to conduct roster training for the control room staff and email the roster to the inspector within 30 days.

30.     Further, when walking through the jail, the inspector saw that detainees had excessive amounts of property in their cells. There were combustibles on light fixtures, dirty vents throughout the jail, sinks that were slow to drain, and a shower panel was coming off the wall. Moreover, some intercoms did not work as designed. Some toilets were out of service, and there were multiple sinks that did not have hot and cold water. The inspector even saw a rodent in an inmate living area stuck on a sticky trap. Jail administration had to email the inspector a plan of action to address all maintenance issues within the following 30 days.  Brazos County jail conditions did not meet even minimum standards.

31.     The TCJS inspected the Brazos County jail once again from August 11 through 12, 2022. If Brazos County had chosen to change its policies, practices, and/or customs as a result of that and prior inspections, A.R. would not have suffered through the horrific assaults, over several hours, in October 2022. As a result of the August 11 through 12, 2022 inspection, the TCJS notified Sheriff Wayne Dicky and County Judge Duane Peters that the Brazos County jail failed to comply

with minimum standards established pursuant to Texas law. Further, they were notified that "appropriate corrective measures must be initiated." They were likewise notified that failure to initiate appropriate corrective action could cause a remedial order to be issued and enforced, or in addition other appropriate action to be taken.

32.     When reviewing restraint logs, which are logs of detainees who were, upon information belief, being held against their will in restraint chairs, the TCJS determined that jail staff exceeded the 15-minute observation checks required by minimum jail standards by as little as one minute and by as many as twenty-one minutes on multiple occasions. Failure to make proper checks of restrained people can result in serious injury or death, which Brazos County knew at the time. The TCJS inspector required jail administration to conduct training with staff regarding documentation required on the observation log for the use of restraints, and to provide to the TCJS documentation that training had been conducted immediately after completion of such training. Brazos County jail administration also had to provide copies of restraint logs to the inspector for the following 30 days, for any detainee placed in restraints.

33.     Further, when reviewing Brazos County jail detainee observation logs, applying to cells and similar holding areas, the TCJS inspector found some instances where detainee checks were late. Further, Brazos County jail staff were not following procedures for documenting why such checks were late. Brazos County jail administration were to re-train all jail staff on the procedure for documenting the reason when a check was late. The inspector noted the minimum time interval checks, required by the TCJS, of 30 minutes and 60 minutes respectively. Generally, a 30-minute minimum interval check is required for detainees who are assaultive, exhibiting bizarre behavior, and/or suicidal. Generally, a 60-minute minimum interval check is required for

all other detainees. These are not necessarily constitutional standards but instead minimum standards mandated by the TCJS.

34.     The TCJS inspector also found, when reviewing recreation logs, that they showed the time that detainees would go to recreation but did not show the time that they returned from recreation. Similar lack of monitoring resulted in A.R. being assaulted. Thus, the inspector was unable to determine if detainees were offered one hour of recreation as required by minimum jail standards. The failure to record when detainees returned from recreation was some evidence of a lax custom or practice regarding making detainee observations. Regardless, the inspector required Brazos County jail administration to submit a plan of action to correct the issue, such submission to occur within 14 days, and such plan to include training all jail staff regarding the issue. As a result of the Brazos County jail failing its inspection, it was issued a notice of non-compliance. It was likewise listed in the short list of county jails at TCJS's website that are out of compliance.

35.     As a result of the assault of A.R., the TCJS issued another notice of non-compliance to the Brazos County jail. The TCJS again notified Brazos County that it failed to comply with minimum jail standards. Further, County's failure to initiate appropriate corrective action could cause a remedial order to be issued and/or enforced, or other appropriate action to be taken. Unfortunately, the notice of non-compliance came far too late for A.R.

36.     The TCJS indicated that Brazos County violated the minimum jail standard that required facilities to have an established procedure for documented, face-to-face observation of all inmates by a jailer no less than once every 60 minutes. That standard also required observation at least every 30 minutes in areas where inmates were known to be assaultive, potentially suicidal, mentally ill, or who had demonstrated bizarre behavior. The TCJS wrote in the notice of non-compliance, "Self-admission and an internal review conducted by Brazos County revealed that

during a serious incident that occurred on October 8, 2022, observation rounds were not conducted for over five (5) hours." A TCJS document also indicated that jail personnel did not enter the area in which A.R. was incarcerated, when he was being assaulted, for a period of over five hours. The TCJS required Brazos County jail administration to conduct documented training of all jail personnel regarding face-to-face observation of detainees as mandated by TCJS minimum jail standards. After completion, a copy of training documents had to be sent to the inspector as well as TCJS inspector Byron Shelton for review. Further, each Friday for the following 30 days, copies of electronic rounds conducted in the affected area, that being in the area in which A.R. was assaulted, had to be sent to the TCJS inspector for review.

### 4.    Other Brazos County Jail Incidents

37.    Brazos County was put on notice, as a result of other alleged material occurrences in its jail, of its need to protect and not punish pre-trial detainees.  Moreover, such occurrences can be some evidence of relevant County custom and practice.

38.    Brazos County was sued on November 2, 2017 regarding the death of Johnny Hall. The federal complaint alleged that, on or about February 15, 2017, Mr. Hall was driving a vehicle in Bryan, Texas. Mr. Hall was stopped by a City of Bryan Police Department officer, arrested, and subsequently taken to the Brazos County jail. The arresting officer saw Mr. Hall throw a clear plastic bag out of his car window, and the bag was found to contain trace amounts of cocaine. According to the complaint, the officer placed Mr. Hall into the back seat of his patrol vehicle. Mr. Hall allegedly exhibited signs of cocaine overdose - sweating profusely, dilated eyes, and barely able to speak. Mr. Hall allegedly was not taken to a local hospital for evaluation but instead directly to the Brazos County jail. According to the complaint, Mr. Hall repeatedly asked for medical attention over the intercom system while in booking at the Brazos County jail.

39.     The complaint further indicated that it was clear that Mr. Hall was suffering extreme physical pain related to a cocaine overdose and was dying. The complaint further alleged that, in response to Mr. Hall's cries for help and medical aid, Mr. Hall was continuously told by Brazos County jail employees to "stay off the button." This referred to the button on the intercom system designed to be used by detainees who need help. When it apparently became even clearer that Mr. Hall had serious medical issues, according to the complaint, EMS arrived at the jail and attempted to revive Mr. Hall. According to the complaint, Mr. Hall died at a local hospital with the cause of death being acute cocaine toxicity.

40.     Brazos County was sued again on July 31, 2019 as a result of the death of Jason LeJunie. The substance of allegations in this paragraph were contained in the original federal complaint. On May 3, 2018, a Bryan Police officer pulled Jason over for an alleged stop sign violation. Instead of giving Jason a citation, the officer took Jason directly to the Brazos County jail. Jason had previously been prescribed lifesaving medications, which the Brazos County jail learned about when it requested his medical records on May 4, 2018. Regardless, while Jason was in the Brazos County jail for eight days, he did not receive any of his prescribed medications for hypertension, chronic anxiety, chronic back pain, and thrombosis of superficial veins in a lower limb. Jason was released from the Brazos County jail on May 10, 2018 but was ultimately found deceased in his home, on or about May 14, 2018, such death occurring as a result of a pulmonary embolism due to deep vein thrombosis.

III.     Causes of Action

     A.     Fourteenth Amendment Due Process Claims Under 42 U.S.C. § 1983: Objective
          Reasonableness Pursuant to *Kingsley v. Hendrickson*

41.     In *Kingsley v. Hendrickson,* 135 S. Ct. 2466 (2015), a pretrial detainee sued several jail officers alleging that they violated the Fourteenth Amendment's Due Process Clause by using

excessive force against him. *Id*. at 2470. The Court determined the following issue: "whether, to prove an excessive force claim, a pretrial detainee must show that the officers were *subjectively* aware that their use of force was unreasonable, or only that the officer's use of that force was *objectively* unreasonable." *Id*. (emphasis in original). The Court concluded that the objectively unreasonable standard was that to be used in excessive force cases, and that an officer's subjective awareness was irrelevant. *Id*. The Court did so, acknowledging and resolving disagreement among the Circuits. *Id*. at 2471-72. The Court flatly wrote "the defendant's state of mind is not a matter that a plaintiff is required to prove." *Id*. at 2472. Instead, "courts must use an objective standard." *Id* at 2472-73. "[A] pretrial detainee must show only that the force purposefully or knowingly used against him was objectively unreasonable." *Id*. at 2473. Thus, the Court required no *mens rea*, no conscious constitutional violation, and no subjective belief or understanding of offending police officers, or jailers, for an episodic claim but instead instructed all federal courts to analyze officers', or jailers', conduct on an objective reasonability standard. Since pretrial detainees' rights to receive reasonable medical and mental health care, to be protected from harm, and not to be punished at all also arise under the Fourteenth Amendment's Due Process Clause, there is no reason to apply a different standard when analyzing those rights.

42.     Thus, the trail leads to only one place – an objective unreasonableness standard, with no regard for any natural person's subjective belief or understanding, should apply to any appropriate claims in this case and all pretrial detainee cases arising under the Due Process Clause of the Fourteenth Amendment. The Fifth Circuit, and the district court in this case, should reassess Fifth Circuit law in light of *Kingsley* and apply an objective unreasonableness standard to any appropriate constitutional claims in this case. The court should not apply a subjective state of mind

and/or deliberate indifference standard to any claims in this case.  The Supreme Court discarded the idea that a pretrial detainee should have such a burden.

43.     This *Kingsley* section potentially applies, depending on the current status of the law, only to any claims that ultimately might be asserted against natural persons, or any episodic act and/or omissions claims against County. Plaintiff makes no allegation or stipulation that deliberate indifference would necessarily be a requirement in such a situation. Regardless, deliberate indifference is not a requirement to prove conditions of confinement claims against County.

### B.     Cause of Action Against Brazos County Under 42 U.S.C. § 1983 for Violation of Constitutional Rights

44.     In the alternative, without waiving any other causes of action pled herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein (including all allegations in the "Factual Allegations" section above) to the extent they are not inconsistent with the cause of action pled here, Defendant Brazos County is liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for violating Plaintiff's constitutional rights including but not necessarily limited to those to receive reasonable medical/mental health care, to be protected, and/or not to be punished as a pre-trial detainee.  These rights are guaranteed by at least the Fourteenth Amendment to the United States Constitution.  Pretrial detainees are entitled to be protected and not to be punished at all, since they have not been convicted of any alleged crime resulting in their incarceration. Regardless, Plaintiff relies on the court to apply the correct constitutional guarantee(s) to facts pled.

45.     County's employees and agents acted or failed to act under color of state law at all relevant times.   County's policies, practices, and/or customs were moving forces behind and caused, were producing causes of, and/or were proximate causes of A.R.'s damages.

46.     The Fifth Circuit Court of Appeals has made it clear that Plaintiff need not allege the appropriate chief policymaker(s) at the pleadings stage.   Nevertheless, out of an abundance of caution, the sheriff of County was County's relevant chief policymaker over matters at issue in this case.   Moreover, in addition, and in the alternative, County jail administrator was the relevant chief policymaker over matters at issue in this case.   Finally, in addition, and in the alternative, County's commissioners' court was the relevant chief policymaker.

47.     County was deliberately indifferent regarding policies, practices, and/or customs developed and/or used with regard to issues addressed by allegations set forth above, for any facts which are ultimately determined to support episodic act and/or omissions claims, to the extent deliberate indifference is a necessary element or prerequisite to such claims at the time the court makes the determination. Deliberate indifference is not an element of a conditions of confinement claim. County also acted in an objectively unreasonable manner.   Policies, practices, and/or customs referenced above, as well as the failure to adopt appropriate policies, were moving forces behind and caused violation of A.R.'s rights and showed deliberate indifference (if legally necessary) to the known or obvious consequences that constitutional violations would occur. Once again, by including the "deliberate indifference" allegation, Plaintiff is not conceding or alleging that deliberate indifference is a necessary element of a conditions of confinement claim.  It is not.

48.     Therefore, Plaintiff suffered at least the following damages, for which Plaintiff seeks recovery from County:

- past physical pain;

- past mental anguish;

- future mental anguish;

- past physical impairment;

- medical, healthcare, and any other expenses incurred in the past on or after the date A.R. turned 18 years of age;

- medical, healthcare, and any other expenses that in reasonable probability will be incurred in the future; and

- loss of earning capacity.

Plaintiff also seeks reasonable and necessary attorneys' fees available pursuant to 42 U.S.C. sections 1983 and 1988.

## IV.      Concluding Allegations and Prayer

### A.      Conditions Precedent

49.     All conditions precedent to assertion of all claims herein have occurred.

### B.      Use of Documents at Trial or Pretrial Proceedings

50.     Plaintiff intends to use at one or more pretrial proceedings and/or at trial all documents produced by Defendant in this case in response to written discovery requests, with initial disclosures (and any supplements or amendments to same), and in response to Public Information Act request(s).

### C.      Jury Demand

51.     Plaintiff demands a jury trial on all issues which may be tried to a jury.

D.    Prayer

52.    For these reasons, Plaintiff asks that Defendant be summoned to appear and answer, and that Plaintiff have judgment for damages within the jurisdictional limits of the court and against Defendant for all damages referenced above and below in this pleading:

a)    actual damages and including but not necessarily limited to:

- past physical pain;

- past mental anguish;

- future mental anguish;

- past physical impairment;

- medical, healthcare, and any other expenses incurred in the past on or after the date A.R. turned 18 years of age;

- medical, healthcare, and any other expenses that in reasonable probability will be incurred in the future; and

- loss of earning capacity;

b)    reasonable and necessary attorneys' fees through trial and any appeals and other appellate proceedings, pursuant to 42 U.S.C. §§ 1983 and 1988;

c)    court costs and all other recoverable costs;

d)    prejudgment and postjudgment interest at the highest allowable rates; and

e)    all other relief, legal and equitable, general and special, to which Plaintiff is entitled.

Respectfully submitted:

Law Offices of Dean Malone, P.C.

_____/s/ T. Dean Malone_____
T. Dean Malone

T. Dean Malone
Attorney-in-charge
Texas State Bar No. 24003265
Southern District of Texas Bar No. 37893
dean@deanmalone.com
Law Offices of Dean Malone, P.C.
900 Jackson Street, Suite 730
Dallas, Texas 75202
Telephone:   (214) 670-9989
Telefax:       (214) 670-9904

Of Counsel:
Michael T. O'Connor
Texas State Bar No. 24032922
Southern District of Texas Bar No. 37991
michael.oconnor@deanmalone.com
Kristen Leigh Homyk
Texas State Bar No. 24032433
Southern District of Texas Bar No. 3513488
kristen.homyk@deanmalone.com
Jennifer Kingaard
Texas State Bar No. 24048593
Southern District of Texas Bar No. 589455
jennifer.kingaard@deanmalone.com
Jordan A. Shannon
Louisiana State Bar No. 37868
Southern District of Texas Bar No. 3746302
jordan.shannon@deanmalone.com
Alexandra W. Payne
Texas State Bar No. 24118939
Southern District of Texas Bar No. 3799983
alexandra.payne@deanmalone.com
Law Offices of Dean Malone, P.C.
900 Jackson Street, Suite 730
Dallas, Texas 75202
Telephone:     (214) 670-9989
Telefax:         (214) 670-9904

Shane Phelps
Texas State Bar No. 15907530
Southern District of Texas Bar No. 1128027
shane@shanephelpslaw.com
Shane Phelps Law
400 North Washington Avenue
Bryan, Texas 77803
Telephone:     (979) 775-4100
Telefax:         (979) 775-4300


Attorneys for Plaintiff